# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2023 ND 171

| | |
|---|---|
| Darren Berger and Tamara Berger, | Plaintiffs, Appellants, and Cross-Appellees |
| v. | |
| Jason Sellers, Krysta Sellers, Jordan Anderson, Personally, and Big River Builders, Inc., | Defendants, Appellees, and Cross-Appellants |
| and | |
| The Misty Waters Owners' Association, | Defendant and Appellee |
| and | |
| Jason Sellers, Krysta Sellers, Jordan Anderson, Personally, and Big River Builders, Inc., | Third-Party Plaintiffs, Appellees, and Cross-Appellants |
| v. | |
| Jeff Carlson, | Third-Party Defendant and Appellee |

### No. 20220322

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Pamela A. Nesvig, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Tufte, Justice.

Nicholas C. Grant (argued) and Shea A. Miller (on brief), Dickinson, N.D., and Bradley J. Beehler (on brief) and Victoria A. Vold (appeared), Grand Forks, N.D., for plaintiffs, appellants, and cross-appellees.

Randall J. Bakke (argued) and Shawn A. Grinolds (appeared), Bismarck, N.D., for defendants, appellees, and cross-appellants.

William P. Harrie (argued), Fargo, N.D., for defendant and appellee.

Katie L. Winbauer (argued) and Chris A. Edison (on brief), Bismarck, N.D., for third-party defendant and appellee.

Zachary E. Pelham and Matthew R. Keller, Bismarck, N.D., for amicus curiae Misty Waters L.L.C.

**Tufte, Justice.**

[¶1]   Darren Berger and Tamara Berger ("Bergers") appeal from a judgment dismissing their claims of violation of a planned unit development (PUD), breach of contract, breach of fiduciary duty, private nuisance, and negligence against their neighbors Jason Sellers and Krysta Sellers ("Sellers"), Sellers' homebuilder Jordan Anderson and Big River Builders, Inc. (together, "Builder"), and the Misty Waters Owners' Association ("Association"). Sellers and Builder cross-appeal from the judgment dismissing their claims of defamation, interference with contract and business, and negligence against Bergers and neighbor Jeff Carlson. The parties argue the district court erred by dismissing their respective claims.

[¶2]   The central issue in this case is whether the PUD minimum setback from the bay can be changed by obtaining a new Letter of Map Revision (LOMR) from the Federal Emergency Management Agency (FEMA) without an amendment to the PUD. We conclude the PUD unambiguously sets the minimum setback from the bay as the contour line in the 2005 LOMR-F and therefore Sellers' home violates the PUD. The judgment of dismissal is affirmed in part, reversed in part, and remanded for further proceedings.

I

[¶3]  Sellers purchased a lot next to Bergers' lot in the Misty Waters development north of Bismarck. Misty Waters is a residential and commercial development located on the shores of the Missouri River and on an inland, man-made, off-river bay. Sellers' and Bergers' backyards are bordered by the Misty Waters Bay. The development is controlled by the Misty Waters Planned Unit Development, which was adopted in June 2005 and amended in 2006 and 2017. The August 2006 "Major PUD Amendment" states "the minimum setback from the bay shall be elevation 1640.3 (NAVD88) as delineated by the contour line described in *the approved LOMR*." (Emphasis added.) The 2017 amendment to the PUD did not change this provision. The approved LOMR in

1

August 2006 was the 2005 LOMR-F. Subsequent LOMR-F's were issued by FEMA in November 2006 and May 2020. Builder applied to FEMA for the 2020 LOMR-F, which is specific to Sellers' lot. It is undisputed that if the 2005 LOMR-F defines the setback from the bay, Sellers' home violates the PUD, and if the 2020 LOMR-F defines the setback, Sellers' home complies with the PUD. In addition to the PUD, the Misty Waters development is governed by restrictive covenants and by-laws. The covenants incorporate the 2006 Major PUD Amendment.

[¶4]   Sellers hired Builder to construct their home. Both the City of Bismarck ("City") and the Association's Architectural Control Committee (ACC) approved construction of Sellers' home. Construction began around September 2019. In March 2020, Darren Berger and neighbor Pat Spilman contacted the Association's president and the City's building official regarding Sellers' home construction and compliance with the setback requirements. Spilman was specifically concerned the construction of Sellers' home either violated or would violate the setback requirements and requested assurances from the Association that the home would comply with all setbacks. The Association's president assured him that the home complied with the setbacks. The building official recommended to Builder to apply for a new LOMR-F because he believed the setback from the bay to be an elevation which can change with the addition of fill dirt and an approved LOMR by FEMA. Builder applied for a new LOMR-F. On May 28, 2020, FEMA issued a new LOMR-F for Sellers' lot. The City issued a certificate of occupancy for Sellers' home.

[¶5]   In the spring of 2020, Darren Berger and neighbor Jeff Carlson had a conversation about Sellers' lot. Carlson testified that Darren Berger told him that he was contemplating commencing a lawsuit against Sellers and Builder because he believed Sellers' home was built beyond the bay setback. Around May 24 or 25, 2020, Carlson called his friend, David Rogstad, a manager at Starion Bank, which was financing the construction of Sellers' home. Carlson testified he told Rogstad that he believed Sellers' home was "50, 60 feet past the setback" and that a possible lawsuit was "coming his way." Rogstad testified that he inspected Sellers' lot the next morning after his phone call with Carlson. Rogstad testified that while he was walking around Sellers' lot,

2

Darren Berger approached him and told him that he believed Sellers' home was built beyond the "flood line" and pointed out the stake he believed marked that line. Rogstad informed Starion's Chief Credit Officer LaDawn Schmitt of his conversations with Carlson and Berger. Starion then paused draw payments on Sellers' construction loan and requested information from Sellers concerning the fill dirt and compliance with the setback. The draws were paused for approximately one to two weeks. Starion also removed Big River Builders from its "approved builders list."

[¶6] In summer 2020, Bergers commenced this lawsuit against Sellers, Builder, and the Association. After amending the complaint, Bergers alleged violation of the PUD, breach of contract for violating the restrictive covenants, breach of fiduciary duty, negligence, and private nuisance. They also sought a declaratory judgment stating the minimum bay setback is the contour line established by the surveyed metes-and-bounds legal description in the 2005 LOMR-F. Sellers and Builder counterclaimed against Bergers, alleging defamation, interference with contract and business, and negligence. Sellers and Builder also brought a third-party complaint against Carlson for defamation and interference with contract and business. After cross-motions for summary judgment, the district court dismissed all claims and entered judgment. Bergers appeal, and Sellers and Builder cross-appeal.

II

[¶7] Our standard for reviewing a grant of summary judgment is well-established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be

3

given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Wheeler v. Southport Seven Planned Unit Dev.*, 2012 ND 201, ¶ 7, 821 N.W.2d 746.

## III

[¶8] Bergers argue the district court erred in concluding Sellers' home does not violate the PUD's bay setback requirement. A PUD is a form of zoning ordinance where "the type, density and placement of land uses and buildings, instead of being detailed and confined to specified districts by local legislation in advance, is determined by contract, or deal, as to each development between the developer and the municipal administrative authority, under broad guidelines laid down by state enabling legislation and an implementing local ordinance." *Wheeler*, 2012 ND 201, ¶ 8. We interpret a zoning ordinance under rules of statutory construction:

The interpretation of an ordinance, like the interpretation of a statute, is a question of law subject to full review on appeal. In construing an ordinance, we ascertain the enacting body's intent by giving the language its plain, ordinary, and commonly understood meaning. When the language of an ordinance is free and clear of all ambiguity, the letter of the ordinance cannot be disregarded under the pretext of pursuing its spirit. We construe ordinances as a whole and harmonize them to give meaning to related provisions. We will ordinarily defer to a reasonable interpretation of a statute by the agency enforcing it, but an interpretation that contradicts clear and unambiguous language is not reasonable.

*Hagerott v. Morton Cnty. Bd. of Comm'rs*, 2010 ND 32, ¶ 13, 778 N.W.2d 813 (citations omitted).

4

## A

[¶9]   The PUD states "the minimum setback from the bay shall be elevation 1640.3 (NAVD88) as delineated by the contour line described in *the approved LOMR*." (Emphasis added.) The district court concluded that "the approved LOMR" is the most recently approved LOMR by FEMA pertaining to the lots described in the LOMR. Thus, the court determined the 2020 LOMR-F pertaining specifically to Sellers' lot was "the approved LOMR" for that lot. In reaching its conclusion, the court noted the 2020 LOMR-F states, "SUPERSEDES OUR PREVIOUS DETERMINATION (This Additional Consideration applies to all properties in the LOMR-F DETERMINATION DOCUMENT (REMOVAL))[.] This Determination Document supersedes our previous determination dated 8/5/2014, for the subject property." Further, the court reasoned the City has discretion when interpreting its own ordinances.

[¶10] Bergers argue "the approved LOMR" refers to the only LOMR in existence at the time that language was added to the PUD, the 2005 LOMR-F. We agree. By its plain language, the PUD refers to a single LOMR ("the" LOMR) which has already been approved by FEMA. The district court's interpretation reads further language into the PUD that does not exist, such as "any" approved LOMR or "the most recently approved LOMR specific to the lot." Under the court's interpretation, at least three approved LOMR's (2005, 2006, 2020) would appear to dictate the bay setback, as opposed to "the contour line described in the approved LOMR."

[¶11] Under our rules of statutory construction, a subsequent modification to an incorporated reference in a statute does not amend the statute unless clearly expressed in the statute:

> One rule applied in the construction of statutes is that where one statute adopts the particular provisions of another statute by a specific and descriptive reference to the statute or provision adopted the effect is the same as though the statute or provision adopted had been incorporated bodily into the adopting statute. Such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the

5

statute so taken unless it does so by express intent or necessary implication.

*Egbert v. City of Dunseith*, 24 N.W.2d 907, 910 (N.D. 1946). In *Egbert*, the Court concluded that although a state constitutional provision prohibiting liquor sale had been repealed, prior to its repeal it had been incorporated by reference in a provision authorizing cities to engage in "business not prohibited by Article 20" (the since-repealed constitutional provision prohibiting the sale of liquor). 24 N.W.2d at 907, 909-10 (interpreting N.D. Const. § 185, now art. X, § 18). Despite the repeal of the prohibition article, we held its incorporation by reference in § 185 preserved the exclusion of liquor sales from the businesses in which cities may engage. *Id.* In *State v. Julson*, the Court construed a state statute adopting by reference the definition of LSD as defined in federal law "as amended" and regulations promulgated thereunder to mean the federal law and regulations in existence at the time of enactment of the adopting statute. 202 N.W.2d 145, 151 (N.D. 1972). Interpreting the statute to avoid constitutional doubt about unlawful delegation of legislative power, the Court concluded, "We do not construe, in this case, the adopting statutes as attempting to adopt future laws, rules or regulations of the federal government." *Id.* As *Egbert* and *Julson* demonstrate, where an incorporated reference is subsequently modified or repealed, that change does not alter the meaning of the law incorporating that reference.

[¶12] Here, the PUD adopted by reference "the contour line described in the approved LOMR" to define the minimum setback from the bay. Thus, the PUD adopted the bay setback requirement existing at the time of adoption and as described in the 2005 LOMR-F. Subsequent LOMRs issued by FEMA do not modify the PUD's bay setback requirement.

[¶13] The district court erroneously relied upon the 2020 LOMR-F's superseding language—"[t]his Determination Document supersedes our previous determination"—in reaching its conclusion that the bay setback pertaining to Sellers' lot was changed when FEMA issued the 2020 LOMR-F. The PUD does not state the setback requirements can be changed through the issuance of a new LOMR by FEMA. To the contrary, within the same paragraph

6

as the setback requirements, the PUD states, "Any change to the density or building setbacks that are inconsistent with these standards will require an amendment to this PUD." The final paragraph in the PUD provides, "This PUD shall only be amended in accordance with Section 14-04-18(4) of the City Code of Ordinances (Planned Unit Developments). Major changes require a public hearing and a majority vote of the Bismarck Planning & Zoning Commission." The PUD has not been amended to change the bay setback. This additional provision within the same paragraph emphasizing that "[a]ny change to the . . . building setbacks" requires an amendment to the PUD further supports the interpretation that the bay setback was a static line as delineated in the 2005 LOMR-F, which landowners and prospective landowners could rely upon.

[¶14] Under section 14-04-19(3) of the Bismarck Code of Ordinances, "Letter of map revision (LOMR)" is defined as "an official amendment to the currently effective flood insurance rate map (FIRM) which is issued by FEMA and changes flood zones, delineations and elevations." Thus, the 2020 LOMR-F superseded FEMA's previous amendment to the flood insurance rate map, but did not supersede provisions of the PUD. The 2020 LOMR-F acknowledges this purpose, stating the subject property is not located in the Special Flood Hazard Area—"an area inundated by the flood having a 1-percent chance of being equaled or exceeded in any given year"—and thus federal mandatory flood insurance is not required. Accordingly, the PUD's bay setback requirement and FEMA's flood insurance rate map determination are not one and the same.

[¶15] We conclude the PUD unambiguously states that the minimum setback from the bay is delineated by the contour line established by the surveyed metes-and-bounds legal description from the 2005 LOMR-F. Because the PUD is unambiguous, we need not consider whether or to what extent the City's interpretation of its ordinance is reasonable and entitled to deference. *Hagerott*, 2010 ND 32, ¶ 13 ("[A]n interpretation that contradicts clear and unambiguous language is not reasonable."); *Pulkrabek v. Morton Cnty.*, 389 N.W.2d 609, 615 (N.D. 1986) (explaining the County's "interpretation is not necessarily controlling," and giving deference to its application of ambiguous term in zoning ordinance as not arbitrary, capricious, or unreasonable). Because Sellers' home violates the PUD, we reverse on this issue as to Sellers

and remand with instructions to grant Bergers partial summary judgment on this issue as requested in their motion for partial summary judgment. To the extent Bergers claim Builder violated the PUD, we conclude Builder was acting as an agent of Sellers in constructing Sellers' home and Builder is not liable for any setback violation caused by Sellers' home. By its plain language, the PUD governs the minimum setback from the bay of residential buildings. Although Sellers' home violates the PUD's bay setback requirement, Builder has no control, possession, or ownership of Sellers' home. Bergers have not argued how Builder's construction of Sellers' home, as opposed to the structure itself extending beyond the bay setback, violates the PUD. Nor have Bergers argued on appeal that Builder has exceeded its role as Sellers' agent and therefore is liable as principal. *See* N.D.C.C. § 3-04-02 (providing when an agent is liable to third persons). We affirm the grant of summary judgment as to Builder.

B

[¶16] Sellers and Builder argue the PUD violation claims were properly dismissed because Bergers failed to exhaust their administrative remedies. The district court concluded Bergers had the right to sue without exhausting their administrative remedies. Bergers contend this issue was waived because Sellers and Builder did not appeal from the order rejecting this argument. Because Sellers and Builder argued in the district court that Bergers failed to exhaust their administrative remedies and are not seeking a more favorable result on appeal than they received in the district court, the exhaustion of remedies argument is properly before us and we turn to the merits of the argument. *Kalvoda v. Bismarck Pub. Sch. Dist. #1*, 2011 ND 32, ¶ 14, 794 N.W.2d 454.

[¶17] Under section 14-05-03 of the Bismarck Code of Ordinances, "It is the intent of this article that questions arising in connection with the enforcement of the article shall be presented first to the Zoning Administrator." As the district court recognized, Bismarck Code of Ordinances § 14-05-04 provides a private right of action for certain violations of zoning ordinances:

> In case any building or structure is erected, constructed, reconstructed, repaired, moved, converted or maintained, or any

8

building, structure, or land is used in violation of this article, the building inspector or any other appropriate authority or any adjacent, nearby or neighboring property owner who would be affected by such violation, in addition to other remedies, may institute injunction, mandamus, or other appropriate action in proceeding to prevent the occupancy of such building, structure or land.

The court concluded the administrative process described in § 14-05-03 does not require first exhaustion, Bergers could pursue either process, and thus the express private right of action in § 14-05-04 allowed Bergers to file suit without exhausting administrative remedies.

[¶18] "Ordinarily, a party must exhaust available administrative remedies before seeking declaratory or injunctive relief." *Zerr v. N.D. Workforce Safety & Ins.*, 2017 ND 175, ¶ 12, 898 N.W.2d 700. One exception to the exhaustion of remedies doctrine is "when a legal question simply involves statutory interpretation and does not need the exercise of an agency's expertise in making factual decisions." *Medcenter One, Inc. v. N.D. State Bd. of Pharmacy*, 1997 ND 54, ¶ 12, 561 N.W.2d 634. In *Medcenter One*, at ¶¶ 2, 5, a hospital sought judgment declaring the pharmacy it owned was exempt from the statutory requirement that it be majority-owned by pharmacists. The State Board of Pharmacy argued the hospital failed to exhaust administrative remedies before suing for declaratory relief. *Id*. at ¶ 8. We concluded the hospital was not required to exhaust administrative remedies prior to suit because the case involved "only the interpretation of an unambiguous statute, and does not involve any issues generally reserved to an administrative decisionmaker." *Id*. at ¶ 21.

[¶19] As stated above, the PUD violation claim involves the interpretation of the PUD, which is governed by the rules of statutory construction. We have concluded the PUD is unambiguous as to the bay setback requirement, and the relevant facts are undisputed. Accordingly, we conclude the district court did not err in determining Bergers did not have to exhaust administrative remedies prior to bringing suit.

9

# IV

## A

[¶20] Bergers argue the district court erred in dismissing their breach of restrictive covenants claims against Sellers and Association.

[¶21] "[A] landowner may sell land subject to restrictive covenants, provided the covenants are not contrary to public policy." *Ceynar v. Barth*, 2017 ND 286, ¶ 12, 904 N.W.2d 469. Although restrictive covenants are not favored, they will be given full effect when "clearly established." *Id.* "The interpretation of a restrictive covenant is generally governed by rules for interpretation of a contract." *Id.* "A breach of contract is the nonperformance of a contractual duty when it is due." *WFND, LLC v. Fargo Marc, LLC*, 2007 ND 67, ¶ 13, 730 N.W.2d 841. "The elements of a prima facie case for breach of contract are: (1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach." *Id.*

[¶22] The restrictive covenants provide:

> **Building Set Back and Location**. THE MISTY WATERS PLANNED UNIT DEVELOPMENT, Ordinance #5435 (as amended and adopted on August 23, 2006), which document is attached hereto as Exhibit "A", and made a part hereof by reference, sets forth the corridors within which all residential structures within the subdivision shall be built. . . . The precise location of all structures to be constructed on a given Lot shall be subject to the prior written consent and approval of the Architectural Control Committee.

Bergers argue that under this covenant the Association has a contractual duty to ensure homes are built in compliance with the PUD setback requirements and Sellers have a contractual duty to build their home within the setback requirements. Given the violation of the PUD's bay setback, Bergers contend the Association and Sellers breached their duties.

[¶23] The district court concluded this issue was moot because Sellers did not violate the PUD setback, and thus determined as a matter of law that Sellers

10

did not breach the covenants. As to the Association, the court concluded that under *Ceynar* "a homeowner does not have a cause of action against an association under a breach of contract/covenant/nuisance claim based upon a failure to enforce restrictions where they are discretionary under the association's by-laws." In *Ceynar*, we concluded that "it is not necessary to address the breach of any contractual obligation the Association allegedly owed to the Ceynars to enforce the covenants" because the district court did not err in determining the covenants did not prohibit the construction of a pool house, which was the alleged underlying violation. 2017 ND 286, ¶¶ 11, 18. Thus, because the construction of the pool house was not in fact a violation of the covenants, we did not need to reach the additional question of whether the Association breached a duty to enforce that covenant. Here, we have determined there was a violation of the PUD, which is incorporated into the covenants. Thus, this case differs from *Ceynar* in that respect and we must determine whether the Association breached a duty owed to Bergers as stated in the covenants.

[¶24] Under the restrictive covenants, lot owners are expressly given the authority to sue "to prevent the breach of, or to enforce the observance of the covenants." Similarly, the by-laws allow lot owners to sue other owners or the Association "for failure to comply with the provisions of the Declaration, these By-Laws, the Restrictive Covenants or with decisions of the Owners' Association which are made pursuant to authority granted the Owners' Association in such documents." Under these provisions, Bergers can sue Sellers and the Association for violating the covenants. The restrictive covenants incorporate by reference the 2006 PUD and require homes to be built according to the PUD requirements. Because Sellers' home violates the 2006 PUD bay setback, we conclude Sellers violated the covenant incorporating that requirement and breached their contractual duty owed to Bergers.

[¶25] As to the Association, Bergers rely on the same provisions of the restrictive covenants incorporating by reference the 2006 PUD setback requirements. Bergers contend that because homes cannot be located beyond the minimum setback from the bay and Sellers' home violates this setback requirement, the Association breached its duty to "only approve structures that

11

comply with the PUD." While the covenants and by-laws allow lot owners to sue the Association for a violation of the covenants, the covenant alleged to be breached must be "clearly established." *Ceynar*, 2017 ND 286, ¶ 12. Bergers have not demonstrated that the Association has a contractual obligation to them to "only approve structures that comply with the PUD" or that the Association breached an express provision of the covenants. In fact, the restrictive covenants state the Association's ACC "shall have total discretion in the approval or rejection of construction plans and the location of all structures to be constructed on each Residential Lot within the Misty Waters." *See also Ceynar*, 2017 ND 286, ¶ 14 (deferring to homeowners' association's finding that covenant prohibiting nuisances was not violated when covenant gave its architectural committee "sole discretion" to determine whether a nuisance existed for purposes of that covenant). Thus, we conclude the Association did not breach a contractual duty in the restrictive covenants and the district court did not err in dismissing the claim as to the Association.

[¶26] We reverse the district court's grant of summary judgment to Sellers, concluding as a matter of law Sellers breached the restrictive covenant incorporating the PUD's bay setback requirement. We remand to the court with instructions to grant Bergers partial summary judgment against Sellers on the breach of restrictive covenants claim as requested in their motion for partial summary judgment. We affirm the grant of summary judgment on the restrictive covenants claims as to the other defendants.

B

[¶27] Sellers argue the district court lacked subject matter jurisdiction over Bergers' claim they violated the covenants and therefore the claim was properly dismissed by the court (albeit for another reason). Sellers contend provisions of the covenants and by-laws preclude the court from determining violations of the covenants. Specifically, Sellers cite the covenant granting the ACC total discretion in approving or rejecting construction plans and structure locations. Sellers also cite a by-law stating that the ACC "shall have the exclusive power, discretion and jurisdiction to approve, modify, or amend plans

12

to cause proposed modifications or improvements to be in conformity and to be compatible with the general building and architectural design."

[¶28] The district court concluded it had subject matter jurisdiction based upon the clear right of action for lot owners under the restrictive covenants and by-laws. We agree. The covenants expressly give lot owners the right to sue "to prevent the breach of, or to enforce the observance of the covenants." The by-laws provide lot owners an express right of action against other lot owners for failure to comply with the provisions of the covenants and by-laws. Thus, the covenants and by-laws have not stripped the court of subject matter jurisdiction as Sellers argue, and we conclude the court did not err in exercising its jurisdiction.

V

[¶29] Bergers contend the district court erred in granting summary judgment on their breach of fiduciary duty claim against the Association. To establish a breach of fiduciary duty, the plaintiff must prove: 1) a fiduciary relationship between the plaintiff and defendant; 2) a duty by the defendant to the plaintiff arising from that relationship; 3) the defendant's breach of that duty; and 4) damage to the plaintiff proximately caused by that breach of duty. *In re Estate of Sande*, 2020 ND 125, ¶ 30, 943 N.W.2d 826. The court concluded Bergers failed to show the existence of a fiduciary relationship between Bergers and the Association. The court noted the parties did not cite any case law that would support a fiduciary relationship in this situation and North Dakota statutory law does not recognize such a relationship.

[¶30] Bergers argue whether a fiduciary relationship exists is a question of fact and under the facts of this case, the fiduciary relationship exists between them and the Association. "Whether a fiduciary relationship exists is generally a question of fact, dependent upon a showing of special circumstances." *Prod. Credit Ass'n of Fargo v. Ista*, 451 N.W.2d 118, 121 (N.D. 1990). In viewing the facts in a light most favorable to Bergers as the non-movant on this claim in the summary judgment stage, a genuine dispute of material fact exists as to whether a fiduciary relationship exists between Bergers and the Association. While a relationship between the parties exists, whether it is akin to a

13

fiduciary relationship requires the fact finder to weigh the evidence. Thus, we conclude the district court erred in concluding as a matter of law no fiduciary relationship can exist between a homeowner and the homeowners' association.

[¶31] The district court also concluded as a matter of law the Association did not *breach* any such fiduciary duty. The Association urges the Court to apply the "business judgment" rule, precluding judicial review of legitimate business decisions of the Association, absent fraud or bad faith. In *Agassiz West Condominium Ass'n v. Solum*, this Court applied the business judgment rule to a condominium board's actions regarding repairs to the condominium common areas. 527 N.W.2d 244, 248 (N.D. 1995). Under the business judgment rule, "absent claims of fraud, self-dealing, unconscionability or other misconduct, the court . . . should limit its inquiry to whether the [board's] action was authorized and whether it was taken in good faith and in furtherance of the legitimate interests of the condominium." *Id.* Even if the business judgment rule applied to the ACC's approval of Sellers' home, which we express no opinion on, factual disputes remain. For example, the president of the Association, who was a member of the ACC, testified she did not review the PUD prior to approving construction of Sellers' home. The vice-president testified he did not review the PUD when he joined the Association's board in 2018, which is also when he became a member of the ACC, and believed the setback from the bay was the same line as the drainage easement. He further testified that he and the president were the only two members of the ACC at one time during the construction approval process of Sellers' home. Thus, a genuine dispute of material fact exists as to whether the Association breached any duty it owed to Bergers when the ACC approved the construction of Sellers' home. We reverse the grant of summary judgment on Bergers' claim of breach of fiduciary duty against the Association.

VI

[¶32] Bergers argue the district court erred in granting summary judgment dismissing their private nuisance claims against Sellers and the Association. "A nuisance consists in unlawfully doing an act or omitting to perform a duty, which act or omission: 1. Annoys, injures, or endangers the comfort, repose,

14

health, or safety of others; . . . or 4. In any way renders other persons insecure in life or in the use of property." N.D.C.C. § 42-01-01; *see also* N.D.C.C. § 42-01-02 (defining private nuisance as affecting "a single individual or a determinate number of persons in the enjoyment of some private right not common to the public"). "Whether a statutory nuisance exists is a mixed question of fact and law." *Ceynar*, 2017 ND 286, ¶ 20.

[¶33] The restrictive covenants state their purpose, in part, is "to prevent nuisances, to prevent the impairment of the attractiveness of the property," and to secure each owner the "full benefit and enjoyment of his or her home and Residential Lot." The district court concluded the nuisance claims based on theories of PUD and covenant violations were moot given its determination that there were no violations. As explained above, the Sellers violated the bay setback requirement in the PUD and restrictive covenants. The PUD and covenant violations constitute an "unlawful" act for purposes of a nuisance under N.D.C.C. § 42-01-01. We conclude the court erred in granting summary judgment to Sellers on Bergers' nuisance claim.

[¶34] In addition to the PUD and covenant setback violations, Bergers contend Sellers' home creates a nuisance through violations of the North Dakota Century Code and Bismarck Code of Ordinances. Under N.D.C.C. § 40-47-03(4), zoning regulations are designed, in part, to provide adequate light. *See also* Bismarck Code of Ordinances § 14-02-01 (same). Under § 14-04-18 of the Bismarck Code of Ordinances, PUDs are intended in part "to preserve the natural and scenic features of open space." Bergers assert these general provisions are violated by Sellers' home blocking light and preventing natural and scenic open spaces. In *Ceynar*, we rejected the homeowners' nuisance claim based on their neighbor's pool house obstructing their view of the "open prairie look" in their subdivision. 2017 ND 286, ¶¶ 25, 28. We concluded the homeowners had no cognizable right to an unobstructed view from their property and as a matter of law the neighbor's pool house did not unreasonably interfere with their use and enjoyment of their property. *Id*. at ¶ 28. Similarly, we conclude Bergers do not have a right to sunlight and open space on adjacent properties. As a matter of law, Sellers' home does not unreasonably interfere with Bergers' use and enjoyment of their property. Thus, to the extent Bergers

15

argue Sellers' home creates a nuisance—independent from the PUD/covenant setback violations—by blocking light and preventing natural and scenic open spaces, we affirm the grant of summary judgment.

[¶35] We reverse summary judgment on Bergers' claim of private nuisance against Sellers based on the setback violation. Because we conclude the Association did not violate the restrictive covenants, we affirm the district court's grant of summary judgment dismissing the nuisance claim against the Association.

## VII

[¶36] Bergers argue the district court erred in granting summary judgment dismissing their negligence claims against Sellers, Builder, and the Association. "Actionable negligence consists of a duty on the part of an allegedly negligent party to protect the plaintiff from injury, a failure to discharge that duty, and a resulting injury proximately caused by the breach of the duty." *Groleau v. Bjornson Oil Co.*, 2004 ND 55, ¶ 6, 676 N.W.2d 763. "Conduct that constitutes a breach of contract does not subject the actor to an action in tort for negligence, unless the conduct also constitutes a breach of an independent duty that did not arise from the contract." *Olander Contracting Co. v. Gail Wachter Invs.*, 2002 ND 65, ¶ 26, 643 N.W.2d 29. Bergers assert the defendants owe them a duty independent from the covenants under N.D.C.C. § 9-10-01, which states, "Every person is bound without contract to abstain from injuring the person or property of another or infringing upon any of that person's rights." Bergers contend that defendants breached this statutory duty by infringing upon their "right to the full benefit and enjoyment of their property, right to be free from private nuisances" and "right to adequate light and the preservation of natural and scenic open spaces."

[¶37] "Negligence actions involve issues of fact and generally are inappropriate for summary judgment." *Palmer v. 999 Quebec, Inc.*, 2016 ND 17, ¶ 9, 874 N.W.2d 303. Whether a duty of care is owed, however, is generally a question of law:

16

> Generally, the existence of a duty is a preliminary question of law for the court. When a duty does not exist, there is no negligence. If determining the existence of a duty depends on resolving factual issues, the facts must be resolved by the trier of fact. However, issues of fact may become issues of law for the court if reasonable persons could reach only one conclusion from the facts.

*Id.* at ¶ 10 (cleaned up).

[¶38] Section 9-10-01, N.D.C.C., was derived from David Dudley Field's proposed Civil Code of the State of New York § 847 (1865) ("Civil Code"), which was adopted by the Dakota Territory legislature. *See* Revised Codes of the Territory of Dakota § 973 (1877); *Grabow v. Bergeth*, 229 N.W. 282, 285 (1930); William B. Fisch, *Civil Code: Notes for an Uncelebrated Centennial*, 43 N.D. L. Rev. 485, 485-86 (1967). To the extent Bergers argue § 9-10-01 requires a special or heightened duty of care by defendants, we reject that argument. Section 9-10-01 codifies the general duty of care to abstain from injuring property or infringing upon rights. *Rassier v. Houim*, 488 N.W.2d 635, 637 (N.D. 1992) (stating N.D.C.C. § 9-10-01 recognizes the "general duty of care"); *Herring v. Lisbon Partners Credit Fund, Ltd. P'ship*, 2012 ND 226, ¶ 17, 823 N.W.2d 493 (recognizing "property owner's general duty to ensure that his property does not injure others or their property" under N.D.C.C. §§ 9-10-01, 9-10-06, 42-01-01(4)); *see also* N.D.C.C. § 9-10-06 ("A person is responsible . . . for an injury occasioned to another by the person's want of ordinary care or skill in the management of the person's property or self."). Other states adopting this Civil Code provision have similarly recognized it sets forth the general duty of care. *See Bassett v. Lamantia*, 2018 MT 119, ¶¶ 23-24, 391 Mont. 309, 417 P.3d 299; *Dewey v. Stringer*, 2014 MT 136, ¶¶ 17, 19, 375 Mont. 176, 325 P.3d 1236; *Katzberg v. Regents of Univ. of Cal.*, 58 P.3d 339, 356-57 (Cal. 2002); *see also Glatt v. Bank of Kirkwood Plaza*, 383 N.W.2d 473, 476 n.4 (N.D. 1986) ("California court decisions construing Field Code sections, while not binding, are entitled to respectful consideration, and may be 'persuasive and should not be ignored.'"); *Becker v. Becker*, 262 N.W.2d 478, 483 (N.D. 1978) (same with other Civil Code states). Thus, we apply general negligence principles in determining whether Sellers, Builder, or the Association owed

17

Bergers a duty of care. Under general negligence principles, we have "focused on both foreseeability of injury and the relationship of the parties in deciding whether a duty exists." *Palmer*, 2016 ND 17, ¶ 15.

[¶39] Bergers contend Sellers owed them a duty to not construct their home so as to injure their property interests. They assert that because the harm caused by the construction of the home was foreseeable and their relationship is that of next-door neighbors and Association members, Sellers had a legal obligation to prevent harm. We conclude Sellers owed Bergers the ordinary duty of care amongst neighbors in a homeowners' association.

[¶40] Bergers argue Sellers' home harms them by extending beyond the setbacks, blocking light, and causing "ongoing drainage issues." Because Sellers' setback duties derive exclusively from the PUD and covenants, Sellers do not owe Bergers an independent duty to abide by the setbacks beyond their contractual duties. *See Olander Contracting*, 2002 ND 65, ¶ 26; *Superior, Inc. v. Behlen Mfg. Co.*, 2007 ND 141, ¶¶ 30-31, 738 N.W.2d 19. Thus, any negligence claim against Sellers based on the setbacks fails as a matter of law.

[¶41] Bergers' negligence claim against Sellers based on Sellers' home blocking light and preventing natural and scenic open spaces fails for the same reason it failed under the nuisance claim. Bergers have no right to sunlight and open space on adjacent properties. Therefore, Sellers have no duty to ensure Bergers retain unobstructed access to sunlight and open space when constructing a home on their property.

[¶42] On the drainage issue, Bergers submitted a report in response to Sellers' motion for summary judgment in which Bergers' expert opines that they would need to expend $5,000 to $10,000 to improve the drainage issues, which Bergers allege are caused by Sellers' home. This raises a genuine issue of material fact whether Sellers negligently built their home, preventing proper drainage and causing damage to Bergers' property. *See Jones v. Boeing Co.*, 153 N.W.2d 897, 899-900, Syl. 5 (N.D. 1967) (noting "[t]he casting of surface waters from one's own land upon the land of another under circumstances where the resulting damage was foreseen or foreseeable, is tortious and liability results

18

if the interference with the flow of surface waters is found to be unreasonable," which is a question of fact). Whether Sellers' home is the proximate cause of the alleged drainage damage is also a disputed question of fact. Thus, we conclude a genuine dispute of material fact exists as to the drainage issue for which summary judgment was inappropriately granted to Sellers.

[¶43] Bergers assert the Association owed them a duty to not approve a home construction that would foreseeably injure their interests. We agree the Association owed Bergers, as members of the Association, reasonable care in approving construction plans. As with the discussion on the claim for breach of fiduciary duty, we do not opine on the extent of this relationship at this summary judgment stage. The fact finder must determine how a reasonable homeowners' association would act under the circumstances and whether this Association exercised reasonable care in performing its duties. Further, a genuine dispute of material fact exists as to whether the Association's actions or omissions proximately caused the alleged harm. Therefore, we conclude genuine issues of material fact exist on Bergers' negligence claim against the Association.

[¶44] Bergers argue Builder owed them a duty to not construct a home in a manner that injured them. "[O]ne who undertakes to design and construct a structure has a duty to exercise ordinary care and skill to protect any who foreseeably, or with reasonable anticipation, may be injured by the failure to do so." *Dinger ex rel. Dinger v. Strata Corp.*, 2000 ND 41, ¶ 16, 607 N.W.2d 886. "Generally, a contractor may be relieved of liability if he followed the contractee's plans or specifications which were defective or insufficient, and the defect or insufficiency caused the damage." *Id*. at ¶ 17. "[A] contractor who follows the owner's plans and specifications may be liable if they are 'so obviously defective and dangerous that no reasonable man would follow them.'" *Id*. (quoting W. Page Keeton, *Prosser and Keeton on Torts*, § 104A, pp. 723-24 (5th ed. 1984)). Bergers do not argue that Builder failed to follow Sellers' plans or specifications in constructing their home. Nor do Bergers contend the plans and specifications were "so obviously defective and dangerous that no reasonable man would follow them." Thus, on this record, we conclude the

district court did not err in determining as a matter of law that Builder was not liable to Bergers in its construction of Sellers' home.

[¶45] Under the general duty of care and the record before us, we conclude the district court erred in determining as a matter of law that Sellers owe no duty of care to Bergers regarding alleged drainage damage caused by Sellers' home. We further conclude the court erred in determining as a matter of law the Association owed no duty to Bergers. We conclude genuine disputes of material fact exist as to whether Sellers and the Association breached a duty owed to Bergers to abstain from injuring property or infringing upon Bergers' rights, and whether a resulting injury was proximately caused by the alleged breach of the duty. *Palmer*, 2016 ND 17, ¶ 9 (noting that because a negligence action involves issues of fact, summary judgment is generally inappropriate). We reverse the grant of summary judgment dismissing Bergers' negligence claims against the Association and against Sellers on the drainage issue. We affirm the grant of summary judgment dismissing Bergers' negligence claim against Builder.

## VIII

[¶46] Sellers and Builder argue the district court erred in dismissing their claims of defamation, interference with contract and business, and negligence against Bergers and Jeff Carlson. These claims are based upon the conversations between Darren Berger, Jeff Carlson, and David Rogstad and the subsequent actions taken by Starion on pausing payments on the construction loan for one to two weeks and removing Big River Builders from its "approved builders list." The relevant statements include: Darren Berger telling Carlson that he was contemplating commencing a lawsuit against Sellers and Big River Builders because he believed Sellers' home was built beyond the bay setback; Carlson telling Rogstad, a Starion employee, he believed Sellers' home was "50, 60 feet past the setback" and a possible lawsuit was "coming his way"; and Darren Berger telling Rogstad that he believed Sellers' home was built beyond the "flood line" and pointing out the stake he believed marked that line. For the reasons stated below, we affirm the dismissal of these claims.

20

## A

[¶47] Builder argues the district court erred in granting summary judgment and dismissing its defamation claims against Darren Berger and Carlson. Defamation consists of slander and libel. N.D.C.C. § 14-02-02. "Slander is a false and unprivileged publication other than libel." N.D.C.C. § 14-02-04. Because we conclude Sellers' home violates the setback requirement, Darren Berger's and Carlson's statements that Sellers' home was built beyond the setback are not false and cannot be defamatory.

## B

[¶48] Sellers and Builder argue the district court erred in dismissing their intentional interference with contract claims against Bergers and Carlson. "To establish a prima facie case for intentional interference with contract, a plaintiff must prove (1) a contract existed, (2) the contract was breached, (3) the defendant instigated the breach, and (4) the defendant instigated the breach without justification." *Hilton v. N.D. Educ. Ass'n*, 2002 ND 209, ¶ 24, 655 N.W.2d 60. Sellers and Big River Builders alleged Berger and Carlson interfered with the construction contract between Sellers and Builder and the construction loan agreement between Sellers and Starion. The district court concluded no evidence was presented showing either of these contracts was breached. Specifically as to the construction contract, the court concluded that Big River Builders was paid in full for the construction, the home was completed by the Fall 2020 Parade of Homes as contracted, and the subcontractors and suppliers were paid in full without any late payment fees or interest charges. As to the construction loan agreement, the court noted that Starion did not pull the loan; rather Sellers elected to obtain a loan with another bank. Sellers and Builder do not cite any express provision of the contracts that was breached. Thus, dismissal of these claims was warranted.

## C

[¶49] Builder contends Darren Berger's and Carlson's statements to Starion employee Rogstad caused the delays in payments and removal from the approved builders list, interfering with its business relationships or

expectancies. "[T]o prevail on a claim for unlawful interference with business, a plaintiff must prove the following essential elements: (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an independently tortious or otherwise unlawful act of interference by the interferer; (4) proof that the interference caused the harm sustained; and (5) actual damages to the party whose relationship or expectancy was disrupted." *Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc.*, 2001 ND 116, ¶ 36, 628 N.W.2d 707. We conclude Builder failed as a matter of law to show Bergers or Carlson committed an independent tort or otherwise unlawful act of interference.

D

[¶50] Sellers and Builder argue the district court erred in dismissing their negligence claims against Bergers. They assert Bergers violated their duty under N.D.C.C. § 9-10-01 to refrain from infringing upon their rights. We conclude as a matter of law a breach of duty did not occur because Darren Berger did not make false statements. Accordingly, the negligence claims were properly dismissed.

IX

[¶51] We have considered the parties' remaining arguments and conclude they are either without merit or unnecessary to our decision. We reverse the district court's grant of summary judgment on Bergers' claims against Sellers for violation of the PUD, breach of restrictive covenants, negligence (drainage), and private nuisance (setbacks). We remand with instructions to grant Bergers partial summary judgment on their claims against Sellers for violation of the PUD and breach of restrictive covenants and for declaratory relief (against Sellers) as requested in their motion for partial summary judgment. We reverse the court's grant of summary judgment on Bergers' claims against the Association for breach of fiduciary duty and negligence. We affirm the court's grant of summary judgment on all of Bergers' claims against Builder, namely the PUD violation, breach of restrictive covenants, and negligence. We affirm the grant of summary judgment on Bergers' claims against the Association for breach of restrictive covenants and private nuisance. We affirm the grant of

summary judgment on all of Sellers' and Builder's claims. The judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

[¶52] Jon J. Jensen, C.J.
     Lisa Fair McEvers
     Jerod E. Tufte
     Douglas A. Bahr
     Bradley A. Cruff, D.J.

[¶53] The Honorable Bradley A. Cruff, District Judge, sitting in place of Crothers, J., disqualified.