2013 ND 110

**SOLARBEE, INC., Plaintiff and Appellee**

**v.**

**Sandra WALKER and Joseph Eilers, Defendants and Appellants.**

No. 20120125.

Supreme Court of North Dakota.

June 24, 2013.

Michael J. Maus (argued) and Patrick D. Hope (on brief), Dickinson, N.D., for plaintiff and appellee.

Jonathan P. Sanstead (on brief) and Christina A. Sambor (argued), Bismarck, N.D., for defendants and appellants.

SANDSTROM, Justice.

[¶ 1] Sandra Walker and Joseph Eilers appeal after the district court found them liable for damages for breach of employment contracts and proprietary information agreements and, as an additional ground, for relief for conspiring to interfere and unlawfully interfering with Solar-Bee's business relationships and expectancies. We affirm the judgment, concluding breach of the employment contracts was tried by consent, the findings were sufficient, and the damages awarded were supported by the evidence.

I

[¶ 2] SolarBee, Inc., is a North Dakota corporation with primary offices in Dickinson, North Dakota. SolarBee manufactures solar-powered water circulators used to clean water in lakes, wastewater bodies, and tanks. Walker and Eilers were employees, both regional managers, of Solar-Bee. Walker oversaw sales and marketing in California, and Eilers' sales territory covered the Pacific Northwest, including Washington, Oregon, Idaho, Alaska, and Hawaii. Walker entered a written employment contract with SolarBee on November 1, 2003, and signed a proprietary information agreement on January 11,

2010. Eilers entered a written employment contract with SolarBee on July 16, 2007, and signed a proprietary information agreement on August 8, 2008.

[¶ 3] In 2008, Joel Bleth, founder of SolarBee and its manager during Walker's and Eilers' employment, exchanged email messages with Dana Wregglesworth of Applied Process Technology, Inc., discussing potential joint opportunities between the two companies. Walker received copies of these exchanges. Wregglesworth consulted for a number of companies, including PCI International. Walker and Eilers then engaged in email communications with various other companies, some being SolarBee's competitors. Bleth found these email messages after Walker left the company. SolarBee then sued Walker and Eilers, alleging breach of proprietary information agreements, misappropriation of trade secrets in violation of N.D.C.C. ch. 47–25.1, breach of fiduciary duty in violation of N.D.C.C. §§ 59–01–09 and 59–01–11,[1] civil conspiracy, and unlawful interference with business.

[¶ 4] The case was tried to the court in November 2011. At trial, the email exchanges were the primary evidence offered. Walker's and Eilers' employment contracts and proprietary information agreements were offered as exhibits without objection. At trial, Bleth testified about documents showing his calculated percentages of gross profit loss attributed to Walker's and Eilers' wrongdoings. Bleth contended 70 percent of SolarBee's losses were a result of their actions. The district court found that Walker and Eilers were in breach of their employment contracts and their proprietary information agreements and, as "an additional basis for liability," that they conspired together and

unlawfully interfered with SolarBee's business relationships or expectancies. The district court found SolarBee failed to prove Walker or Eilers misappropriated trade secrets. The district court found Walker liable for damages in the amount of $541,800 and Eilers liable for damages in the amount of $80,800.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Walker timely appealed under N.D.R.App.P. 4(a). We have jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

### A

[¶ 6] Walker and Eilers argue the district court erred in awarding damages under a cause of action that was not pled by SolarBee—breach of the employment contracts.

[¶ 7] The employment contracts between Walker and Eilers and SolarBee underlie this litigation. Nevertheless, breach of the employment contracts was not one of the five specific causes of action pled.

[¶ 8] The employment contracts with Walker and Eilers were introduced without objection. Bleth testified they violated their employment contracts.

[¶ 9] Breach of the proprietary information agreements was specifically pled. There is significant overlap between the proprietary information agreements and the employment contracts. The district court found Walker and Eilers did not devote their *"entire time and best efforts* into selling the company's products," with this emphasized language coming from the

---

1. Both of these statutes were repealed by 2007 N.D. Sess. Laws ch. 549, § 27, effective August 1, 2007.

employment contracts and not the proprietary information agreements.

[¶ 10] The district court also found Walker and Eilers "violated the Proprietary Information Agreement and Invention Assignment by diverting customers, engaging in conflicting activities and consulting and rendering services to persons or entities marketing products to or in competition with systems or services offered by SolarBee."

[¶ 11] The district court did not distinguish damages resulting from breach of the employment contracts and the damages resulting from the breach of the proprietary information agreements. Additionally, Walker did not sign the proprietary information agreement until 2010, while the district court faults her conduct prior to that date.

[¶ 12] " 'Consent to try an unpleaded issue cannot be inferred from the lack of objection to evidence on one pleaded.' " *Mann v. Zabolotny*, 2000 ND 160, ¶ 12, 615 N.W.2d 526 (quoting *Fleck v. Jacques Seed Co.*, 445 N.W.2d 649, 652 (N.D.1989)). Here the employment contracts were reasonably relevant to issues pled.

[¶ 13] "[A]mendment by implication under N.D.R.Civ.P. 15(b) is limited to situations where the novelty of the issues sought to be raised is reasonably apparent and the intent to try these issues is clearly indicated by failure to object or otherwise." *Id.* at ¶ 13 (internal quotation omitted). In this case, the issue of breach of the employment contract was raised in SolarBee's pre-trial brief and in its opposition to Walker's and Eilers' motion to dismiss. In each case there was no objection by Walker and Eilers.

[¶ 14] In its short, pre-trial brief, SolarBee wrote:

Defendants were Regional Supervisors for Plaintiff in the Western portion of the United States. At the onset of their employment with Plaintiff, Defendants both signed Employment Agreements and Proprietary Information Agreements which have been marked as Plaintiff's Exhibits 1–4. Defendants' alleged actions against Plaintiff are in violation of this agreement, thereby constituting a breach of contract and a breach of their fiduciary duty as employees of Plaintiff. . . .

In breaching this contract, Defendants also misappropriated trade secrets in violation of N.D.C.C. § [sic] 47–25.1.

There was no objection from Walker and Eilers.

[¶ 15] During trial, Walker and Eilers moved to dismiss:

MR. SANSTEAD: Your Honor, at this point we would move for judgment in favor of the defendants. There has certainly not been a showing that there's been a breach of any duty of loyalty, that there's been a violation of the North Dakota Trade Secrets law, that there has been any type of conspiracy between Ms. [sic] Eilers and Ms. Walker, nor have they substantiated that there's been a breach of any type of agreement. This case was based on Joel Bleth providing his interpretation of some emails. But even his interpretation doesn't get to the level that's necessary to satisfy the claims that they've asserted.

So, Your Honor, we would ask that this case would be put to bed and that the plaintiff's claims be dismissed.

THE COURT: Mr. Maus.

MR. MAUS: Your Honor, I think we've clearly shown a violation of both employment contracts, where they were supposed to devote 100% of their time to SolarBee and they're spending more

than half their time trying to put together an oxygenation company that would compete with SolarBee. They've violated the confidentiality agreements and state law in terms of providing all kinds of proprietary information to Dana Wregglesworth, PSI (verbatim), and others, clearly in violation of both the confidentiality agreement and state law. And we think it's a very clear case of violation of the contract and of state law.

THE COURT: The Court will deny the motion at this time.

Again, there was no objection from Walker and Eilers that breach of the employment contracts was not an issue.

[¶ 16] We conclude that the "novelty" of the breach of the employment contract issue was reasonably apparent and the intent to try the issue was "clearly indicated by failure to object or otherwise." *See Mann*, 2000 ND 160, ¶ 13, 615 N.W.2d 526.

### B

 [¶ 17] Walker and Eilers argue the district court's findings are inadequate under N.D.R.Civ.P. 52(a) because they fail to support necessary elements of the causes of action of breach of the proprietary information agreements. They do not argue the district court's findings are inadequate to support the necessary elements of breach of the employment contracts, but rather limit their argument on those contracts to whether that cause of action was properly before the district court as discussed in subsection A, *supra*. Rule 52(a), N.D.R.Civ.P., provides:

In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court.

Findings of fact are adequate under N.D.R.Civ.P. 52(a) if they provide us with an understanding of the factual basis used by the district court in reaching its decision. *City of Fargo v. Salsman*, 2009 ND 15, ¶ 9, 760 N.W.2d 123. A lack of specificity alone does not make findings of fact erroneous. *State v. Bergstrom*, 2006 ND 45, ¶ 15, 710 N.W.2d 407.

[¶ 18] Walker and Eilers argue a party alleging a breach of contract has the burden of proving (1) the existence of a contract, (2) a breach of the contract, and (3) damages which flow from the breach. *Martin v. Trinity Hospital*, 2008 ND 176, ¶ 29, 755 N.W.2d 900.

[¶ 19] The district court concluded Walker and Eilers breached their proprietary information agreements. The court found the proprietary information agreements signed by Walker and Eilers were entered into evidence. The proprietary information agreements contain the following relevant stipulations:

### 7. Non–Solicitation

I agree that at all times during, and for a period of two (2) years after termination[2] of my association with or employment by the Company, I will not directly or indirectly, by myself or in conjunction with any person or firm, (i) divert or take away any customer, dealer or distributor, or (ii) solicit or employ, or attempt to employ on behalf of myself or any third party, any of the Company's employees in any competitive business.

---

**2.** In their pre-trial brief, Walker and Eilers raised North Dakota's public policy against restraints on solicitation after employment ceases, *see* N.D.C.C. § 9–08–06; *Warner and Co. v. Solberg*, 2001 ND 156, 634 N.W.2d 65, but they do not renew it in view of the findings that do not include post-employment conduct.

### 8. Conflicting Employment

I agree that during my association with or employment by the Company, I will not engage in any other employment, occupation, consulting or other activity relating to the business in which the Company is now or at such time engaged, or which would otherwise conflict with my obligations to the Company.

### 9. Non–Competitive Employment

At all times during, and for a period of two (2) years after termination[3] of my association with or employment by the Company, I will not, directly or indirectly, render services within any geographic territory for which I was responsible in any sales, advisory, consulting, development or promotional capacity, to any competitor of the Company, in connection with the development, manufacture, marketing, sale, leasing, servicing or promotion of any product in existence or under development which is the same as or similar to or competes with any Company product, process, system, or service with which I worked during my association with the Company, or about which I have acquired Confidential Information, nor will I engage in any other activities that conflict with my obligations to the Company.

[¶ 20] The district court made the following findings: Dana Wregglesworth formed a company called Copper State Services, LLC, for marketing oxygenation systems, and Walker told Wregglesworth she would be a part of the marketing effort; Wregglesworth distributed an email message to PCI International, a company for which he consulted, proposing a marketing plan for Walker and himself to use in attracting clients for oxygenation projects; Wregglesworth submitted a pro-posal to PCI International and Walker that included a sale of SolarBee equipment and additional oxygenation equipment, and Walker never informed SolarBee of the proposal; Wregglesworth emailed Walker a patent application for a system not sold by SolarBee, which she testified to having helped edit; Walker sent an oxygenation proposal for the Upper Oso Reservoir that was never disclosed to SolarBee; and Wregglesworth sent an email to Walker containing his business plan calling for an oxygenation process through Copper State Resources, LLC, with no mention of Solar-Bee.

[¶ 21] The district court also found that Eilers sent an email message to Walker telling her he had revamped the website of the company he was supposed to have been winding down and that Walker and Eilers developed a market study for an oxygenation business and hid the study from SolarBee. In addition, the court found PurO2 was an oxygenation company being formed by Wregglesworth and Walker to provide oxygenation equipment, Eilers told Wregglesworth and Walker he planned to provide oxygenation information to prospective SolarBee clients, and Walker sent Wregglesworth a presentation for an oxygenation project that she and Eilers had prepared.

[¶ 22] In an email, Walker instructed Wregglesworth to warn a PCI International employee not to send too much information to another SolarBee salesman. Walker testified that from November 2009 to November 2010 she considered working for Wregglesworth while she was still employed with SolarBee and that her loyalties were to herself. In another email message, Eilers told another SolarBee employee, "As for how to tell Joel [Bleth] his theories are unsupportable. . . . I have no

---

**3.** *See supra* footnote 2.

idea how to communicate that to the Dickinson group. You should consult Sandy on that score. Maybe just say nothing. That's my new motto." And later, "I have to pretend I know nothing." In another email message exchange between Walker and Wregglesworth, Walker expressed frustration with Bleth, stating, "I think he just wants to force me to quit." Wregglesworth responded by encouraging her to get PCI International on board with their oxygenation project, "then hasta la vista Solarbee for you. We'll buy them for our own uses. Or we'll choose to compete. . . . its [sic] a big world out there. . . ." Further emails disclosed Walker and Eilers sent proposals to companies in Minnesota and South Dakota, areas well out of their sales territories. They also continued to work with Wregglesworth on other major oxygenation projects and presentations that were not disclosed to Bleth or to Solar-Bee's Dickinson office. Bleth testified he considers oxygenation a direct competitor. He testified that if someone is buying oxygenation equipment, they are less likely to buy SolarBee equipment.

[¶ 23] We conclude the district court's finding Walker and Eilers in breach of their proprietary information agreements is supported by the evidence and is not clearly erroneous. Damages are discussed in the following subsection.

## C

[¶ 24] Walker and Eilers also argue the damages granted to SolarBee by the district court were impermissibly speculative, vague as to basis for the award, and not tied to any properly pled cause of action. Whether breach of the employment contracts was properly before the district court is resolved in subsection A, *supra*.

[¶ 25] The measure of damages for breach of contract is provided by law. Section 32–03–09, N.D.C.C., provides:

> For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by the laws of this state, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby or which in the ordinary course of things would be likely to result therefrom. No damages can be recovered for a breach of contract if they are not clearly ascertainable in both their nature and origin.

*See also Vallejo v. Jamestown College,* 244 N.W.2d 753, 758 (N.D.1976) ("The general rule in the case of a breach of contract is that the measure of damages is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it has entailed. The person injured is, as far as it is possible to do so by monetary award, to be placed in the position he would have been in had the contract been performed.") (citation omitted). Walker and Eilers raised no objection to the potentially conflicting theories of recovery or to the measure of damages used by the district court, and we limit our consideration to the scope of the issue they have framed.

[¶ 26] The district court disallowed some of SolarBee's causes of action and disallowed much of its claimed damages. The court acknowledged, "SolarBee did not establish definitively why and how it lost sales. SolarBee acknowledges that part of the loss was caused by economic recession." The court recognized Walker "was unhappy that SolarBee changed her method of compensation" and noted "SolarBee's loss in sales may have been, at least in part, because of its own business decision and treatment of its employees."

The court added that it "was left to speculate as to what role bad publicity may have played in the drop in sales.... The percentage of gross profit loss attributable to the wrongful acts of Defendants Walker and Eilers is somewhat speculative and difficult to ascertain with precision." But the district court correctly analyzed the law:

> However, the general rule is that evidentiary imprecision regarding the amount of damages does not preclude recovery. *Farmers Insurance Exchange v. Schirado*, 2006 ND 141, ¶ 17, 717 N.W.2d 576. The best evidence the circumstances will permit is all the law requires. *Id.* The uncertainty which prevents recovery is the uncertainty of the fact of damages, not the uncertainty of the amount. *Id.*

The district court found, "In this case, the Court is convinced that SolarBee suffered damages for which Defendants are liable."

[¶ 27] At trial, Bleth testified SolarBee grew 14 percent in 2008 and grew 16 percent in sales and goods in California. He testified the recession hit in October but the company had momentum into 2009 and still grew by 6 percent in all regions but California. He testified equipment sales and rentals in California dropped by 63 percent in 2009. Bleth testified that because California sales dropped so sharply in 2009, California grew 26 percent in 2010. He testified that in 2011, however, the company grew 26 percent and California fell 61 percent. Bleth testified that if he calculated what happened to SolarBee's growth in all states except Walker's California region and Eilers' Washington, Oregon, and Idaho region and applied that growth to California, Solarbee would have made $2.2 million more in equipment sales and rentals in 2009, $1.5 million more in sales in 2010, and $3.4 million more in sales in 2011. Bleth testified SolarBee would have made $5 million in gross profit had California performed the same as the rest of the country.

[¶ 28] The district court found that from February 2009 through April 2010, Walker earned an average of $15,000 per month for a total of $225,000. The court found her sales in California were $4,313,574 in 2008 and $1,929,355 in 2009. The district court found Walker's total loss of sales was $2,064,000. The court found Eilers was paid an average of $7,000 per month from April 2009 through June 2010 for a total of $105,000. The court found his sales were $340,000 in 2008, $423,000 in 2009, and $19,000 in 2010.

[¶ 29] When assessing damages, the district court, in making its findings, relied on testimony from Joel Bleth as well as a summary of damages introduced by SolarBee and admitted into evidence. SolarBee's exhibit calculated damages caused by Walker and by Eilers individually. In determining the total damages caused by each salesperson, SolarBee's damages spreadsheet first calculated Walker's and Eilers' monthly salaries for a fifteen-month period, minus the percentage of alleged time spent on personal projects, to come up with a total salary loss figure. It next included each employee's sales expenses and support costs based on 30 percent of the total salary loss figure. Lost sales in each individual's sales territory were next calculated, of which SolarBee attributed 75 percent gross profit loss. Additionally, SolarBee attributed 30 percent of lost sales to economic recession and 70 percent of lost sales to the salesperson. Finally, SolarBee included a "cost to repair relations, build sales momentum back" figure to complete its calculation of total damages.

[¶ 30] Supplementing SolarBee's damages exhibit, Bleth testified Walker and Eilers spent 50 percent and 70 percent, respectively, of their time on personal projects and calculated their total loss of sala-

ry to be $112,500 and $73,500, which So-larBee sought to recover. He testified SolarBee's cost to "support, go to shows, pay gas mileage, airfares, and some clerical help" was 30 percent of a salesperson's sales. Those figures totaled $33,750 for Walker and $22,050 for Eilers. Bleth then testified to the yearly loss in sales in Walker's and Eilers' individual sales regions, losses in California for Walker, and losses in Oregon, Washington, Idaho, Alaska, and Hawaii for Eilers. Bleth attributed 70 percent of the yearly losses to the individual salesperson and 30 percent to an economic recession for a total of $482,661 for Walker and $212,100 for Eilers. Finally, Bleth testified to Walker's cost to repair relations:

> I had in my mind to have either a very amazing salesperson at 250,000, but most likely two normal salespeople at 100,000 salary plus 25,000 expenses. So two people at 125,000 costs each for two years to get the pipeline and momentum going again and get California turned around.

SolarBee calculated costs to repair relations in Eilers' sales region to be $120,000 per year for two years, totaling $240,000.

[¶ 31] SolarBee's damages exhibit calculated the total damages caused by Walker to be $1,128,911 and total damages caused by Eilers to be $547,650. Bleth testified the sales loss caused by Walker was actually too low in the figures Solar-Bee presented to the court, and an accurate total damages figure was $1,730,235. Walker and Eilers neither objected to Bleth's damages testimony at trial nor introduced damages figures of their own.

[¶ 32] The district court found Walker and Eilers liable for 35 percent and 20 percent, respectively, of SolarBee's gross profit loss in their respective sales locations over a 15–month period. The court accepted Bleth's testimony and SolarBee's damages calculations showing Walker and Eilers were responsible for 70 percent of SolarBee's losses in their geographic sales regions, but rejected that number and instead lowered the loss responsibility to 35 percent for Walker and 20 percent for Eilers, basing its numbers on a calculation that would not allow for double recovery for SolarBee. Concluding Bleth did not adequately explain SolarBee's claim for sales support expenses nor did SolarBee prove it would incur costs to repair relations and rebuild sales momentum, the court rejected those claims for damages. The district court's findings of damages are within the evidence and testimony provided. The evidence supports the district court's findings that because Walker and Eilers breached their proprietary information agreements and employment contracts, SolarBee would have suffered damages. We conclude the district court's findings are not clearly erroneous.

### D

[¶ 33] Because we affirm on the basis of breach of employment contracts and breach of the propriety information agreements, we need not address the district court's additional basis for liability that Walker and Eilers conspired together and tortiously or unlawfully interfered with So-larBee's business relations or expectancies. *See Bakke v. D & A Landscaping Co.,* 2012 ND 170, ¶ 19, 820 N.W.2d 357 (we will not render an advisory opinion).

### III

[¶ 34] We affirm the district court's judgment.

[¶ 35] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.