# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 168

Jacob Ebel, John Ebel, and Ordeen Ebel,

Plaintiffs, Appellees, and Cross-Appellants

v.

Yvonne Engelhart, as Personal Representative
of the Estate of Mark Lee Engelhardt;
Mary DePuydt d/b/a/ DePuydt Law Office,

Defendants

and

Tom Gross,

Defendant, Appellant, and Cross-Appellee

## No. 20240065

Appeal from the District Court of McIntosh County, Southeast Judicial District, the Honorable Bradley A. Cruff, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Drew J. Hushka, Fargo, ND, for plaintiffs, appellees, and cross-appellants.

Timothy P. Hill, Fargo, ND, for defendant, appellant, and cross-appellee.

**McEvers, Justice.**

[¶1]   Tom Gross appeals from a judgment declaring valid contracts for the sale of real property were created between Yvonne Engelhart, as personal representative of the estate of Mark Engelhardt (the "Estate"), and Jacob Ebel, John Ebel, and Ordeen Ebel (the "Ebels"). Gross argues the district court erred by recognizing the Ebels' contracts with the Estate, instead of his contract, and failing to determine the personal representative or her attorney modified the bidding conditions or waived any irregularities in the bidding process. The Ebels cross-appeal, arguing the court erred in dismissing their tortious interference with contract claims against Gross. We affirm, concluding the court did not err in declaring the contracts between the Ebels and the Estate were valid, and in dismissing the Ebels' claims for tortious interference with contract.

I

[¶2]   At the time of his death, decedent Mark Engelhardt owned multiple parcels of real property in McIntosh County. Yvonne Engelhart was appointed personal representative of the Estate. The Estate elected to sell the property, retaining Mary DePuydt as its attorney and providing notice of the sale by letter to interested persons and adjacent landowners, including the Ebels and Gross. The December 7, 2021 letter stated how to submit a bid:

> Bidding will be handled remotely by written submission opened by Mary DePuydt of DePuydt Law Office. If you would like to place a bid it must be done in writing delivered to the DePuydt Law Office no later than December 17, 2021 at 2pm in order to be considered. All bids should be structured as per acre. In addition, all bids must be signed, dated, and include the phone number at which the bidder should be contacted in the case of a winning bid. Any bids received after this time, even if the opening has not commenced, will be disregarded. . . .
>
> . . . .

On December 17, 2021 on or after 2:00PM[,] Mary [DePuydt] and I will meet and she will open the bids to see who has the highest bid. Individuals who have submitted a bid are welcome to be present if they request notice of the time of opening prior on or before December 16, 2021. The winning bidder will be the highest bid, and the winning bid amount will be deemed to be $50 per acre plus the second highest bid, not to exceed the highest bid. . . . We will notify the highest bidder on this day. No person shall have the right to amend their bid after the submission deadline or to rebid after the opening of bids.

[¶3]  On December 17, 2021, at approximately 1:20 p.m., Gross arrived at the DePuydt Law Office and handed DePuydt four copies of soil maps for the properties being sold. Each soil map had a handwritten notation of "x 4000" next to the printed acreage amount and a handwritten total dollar amount. The soil maps did not have his signature, the date, or his phone number. DePuydt testified she did not realize the soil maps were intended to be bids and handed them back to Gross. Gross testified he thought DePuydt recorded his bids.

[¶4]  At approximately 1:30 p.m., the Ebels arrived at DePuydt's office and handed their written bids to DePuydt's secretary. The Ebels' bids included a signature, date, phone number, and a price-per-acre amount. At approximately 2:00 p.m., DePuydt asked if anyone in attendance had any questions. When no one responded, DePuydt began opening and recording the written bids in her possession. The district court found she recorded the following bids:

|  | Section 1 Property | Section 11 Property | Section 12 Property | Section 13 Property |
|---|---|---|---|---|
| James Engelhart |  | $1,000/acre | $1,000/acre |  |
| John Ebel | $1,100/acre | $1,000/acre | $1,520/acre | $500/acre |
| Jacob Ebel | $1,520/acre | $800/acre | $1,100/acre | $450/acre |
| Ordeen Ebel |  | $2,002/acre |  | $2,002/acre |

DePuydt announced the winning bidders: Jacob Ebel for the Section 1 property, Ordeen Ebel for the Section 11 and Section 13 properties, and John Ebel for the Section 12 property.

[¶5]   DePuydt asked if anyone wanted to look at the document on which she recorded the bids, and Gross stated he did. After DePuydt handed Gross the document and he reviewed it, Gross asked, "What about my bid?" DePuydt responded by stating something to the effect of, "Oh yeah," recalling her prior interaction with Gross. Gross handed her the four soil maps, which according to DePuydt had not changed from when she previously looked at them. DePuydt then told Gross to sign and date the soil maps, which he did. His phone number was never added. DePuydt accepted Gross's bids and declared him the winning bidder of the four properties. The personal representative, who was present, did not object to DePuydt declaring Gross the winning bidder.

[¶6]   The Ebels commenced suit, seeking declaratory relief against the personal representative and Gross for a determination that valid contracts were created between the Estate and the Ebels. The Ebels also sought injunctive relief against the personal representative, enjoining her from transferring the properties to Gross; and claimed breach of contract against her for refusing to sell the properties, and tortious interference with contract against Gross. The Ebels moved for partial summary judgment on its declaratory judgment and breach of contract claims. Gross opposed the motion, arguing his bids were valid and the Estate amended the bidding process. The district court denied the motion, concluding genuine issues of material fact existed, including whether the Estate "modified the bidding conditions" or "waived any irregularities of bids."

[¶7]   After a bench trial, the district court dismissed the claims, concluding the contracts were invalid for failure to satisfy the statute of frauds. In *Ebel v. Engelhart*, 2023 ND 234, ¶ 12, 999 N.W.2d 187, we reversed the judgment of dismissal, concluding the district court misapplied the law by applying the statute of frauds when it was not specifically pled or otherwise raised by the parties. On remand, the court granted the Ebels declaratory relief, declaring their contracts with the Estate to be valid. The court granted the Ebels' breach of contract claims because the Estate failed to timely close on the properties, and

ordered specific performance. The court dismissed with prejudice the claims of injunctive relief and tortious interference with contract. On the tortious interference with contract claims against Gross, the court found that although Gross instigated the breaches of contract, his actions were justified under the circumstances. The court entered judgment. Gross appeals, and the Ebels cross-appeal.

## II

[¶8] Our standard for reviewing an appeal after a bench trial is well-established:

> In an appeal from a bench trial, the trial court's findings of fact are reviewed under the clearly erroneous standard of N.D.R.Civ.P. 52(a) and its conclusions of law are fully reviewable. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. In a bench trial, the trial court is the determiner of credibility issues and we do not second-guess the trial court on its credibility determinations.

*Savre v. Santoyo*, 2015 ND 170, ¶ 8, 865 N.W.2d 419.

## III

[¶9] Gross argues the district court erred by declaring valid contracts were created by the Ebels and the Estate, instead of recognizing a contract between him and the Estate.

> [W]hether an unambiguous written agreement constitutes a valid contract is a question of law for the court. However, we have noted that the determination of mutual consent, although resulting in a legal conclusion, necessarily involves factual questions. Thus, the determination of the existence of a contract is a purely legal question only when mutual consent, and the other requisite elements of a contract, are demonstrated clearly and unambiguously on the face of the written contract.

*Hartman v. Grager*, 2021 ND 160, ¶ 27, 964 N.W.2d 482. "When the existence of a contract is not purely a legal question, it is a question of fact and the trier of fact determines whether a contract is intended to be a complete, final, and binding agreement." *Ehlen v. Melvin*, 2012 ND 246, ¶ 8, 823 N.W.2d 780.

[¶10] "A contract requires parties capable of contracting, consent of the parties, a lawful object, and sufficient consideration." *Ehlen*, 2012 ND 246, ¶ 9; *see also* N.D.C.C. § 9-01-02. Consent must be free, mutual, and communicated by each party to the other. N.D.C.C. § 9-03-01. "Consent is not mutual unless the parties all agree upon the same thing in the same sense." N.D.C.C. § 9-03-16.

[¶11] "A contract requires an offer, an acceptance of an offer, and a mutual acceptance and understanding between the offeror and the offeree as to the terms of the obligation." *Cooke v. Blood Sys., Inc.*, 320 N.W.2d 124, 128 (N.D. 1982). "The acceptance of a contract must comply with the terms of the offer." *Ehlen*, 2012 ND 246, ¶ 10. If the offer contains no conditions concerning the communication of accepting an offer, "any reasonable and usual mode may be adopted." N.D.C.C. § 9-03-18. "[A]cceptance must be absolute and unqualified." N.D.C.C. § 9-03-21.

A

[¶12] The district court concluded valid contracts were formed between the Ebels and the Estate with the essential terms provided by the December 7, 2021 notice letter and the Ebels' written bids. The Ebels contend the Estate solicited offers from interested persons through the notice letter, the Ebels made offers through their bids complying with the notice, and the Estate accepted those offers when DePuydt declared them the winning bidders.

[¶13] Generally, a solicitation for bids is not an offer. *See Delta Testing and Inspection, Inc. v. Ernest N. Morial New Orleans Exhibition Hall Auth.*, 699 So. 2d 122, 124-25 (La. Ct. App. 1997); 17 C.J.S. *Contracts* § 81 (May 2024 Update); 17A Am. Jur. 2d *Contracts* § 49 (May 2024 Update); 1 *Williston on Contracts* § 4:13 (4th ed. May 2024 Update). When, however, "the seller has manifested an intent to be bound by the highest bid submitted, his request for bids is an offer." *Carver v.*

*Teitsworth*, 2 Cal. Rptr. 2d 446, 449 (Cal. Ct. App. 1991); *see also* 1 *Williston on Contracts* § 4:13 & n.13.

[¶14] In this case, the result is the same whether the notice letter or each written bid is an offer for the sale of property. If the notice letter is a solicitation for offers, the Ebels' bids were the offers and DePuydt's declaration that they were the winning bidders was acceptance from the Estate. If the notice letter is the Estate's offer to accept the highest bid complying with its terms, the Ebels' bids, upon declaration that they were the highest bids (in compliance with the terms of the offer), constitute acceptance. Acceptance in either case was absolute and unqualified under N.D.C.C. § 9-03-21. We conclude the district court did not err in concluding contracts were formed between the Ebels and the Estate.

[¶15] Gross argues DePuydt's declaration that the Ebels were the winning bidders was either a misstatement or mistake. An apparent consent is not free when obtained through mistake. N.D.C.C. § 9-03-03. The Ebels argue Gross did not preserve these arguments for appeal because he failed to raise them in the district court. Arguments not raised in the district court are not preserved for appeal. *See Working Cap. No. 1, LLC v. Quality Auto Body, Inc.*, 2012 ND 115, ¶ 13, 817 N.W.2d 346 (concluding that we will not consider an argument raised for the first time on appeal). In his reply brief, Gross states only that the misstatement argument "was one of the principal contentions at trial," but he fails to provide any record cite. *See* N.D.R.App.P. 28(b)(7) (requiring appellant's argument to "cit[e] to the record showing that the issue was preserved for review; or a statement of grounds for seeking review of an issue not preserved"). Gross does not state that the mistake argument was preserved for appeal or cite to the record showing it was preserved for review. Upon review of the record, we conclude these issues were not raised in the district court and therefore have not been preserved for appeal.

[¶16] We conclude that the district court did not err in declaring contracts were formed between the Ebels and the Estate when DePuydt announced the Ebels as the winning bidders.

B

[¶17] Gross argues the district court erred by failing to recognize a contract was created between him and the Estate. To the extent Gross argues that he formed contracts with the Estate prior to DePuydt declaring the Ebels the winning bidders, DePuydt testified she did not realize Gross's soil maps were intended to be bids when he first handed them to her. Therefore, there was not a meeting of the minds between the Estate and Gross prior to declaring the Ebels the winning bidders and formation of their contracts. *See Ehlen*, 2012 ND 246, ¶ 9 ("The parties' mutual assent is determined by their objective manifestations, not their secret intentions."). Further, Gross's bids did not comply with the notice letter, failing to include a signature, date, and phone number prior to the 2:00 p.m. deadline. The notice letter stated these as mandatory conditions. Accordingly, even if the notice letter is an offer, the letter conditioned acceptance on complying with these terms. Failing to comply with the terms of an offer renders acceptance ineffective. *Id.* at ¶ 10; N.D.C.C. § 9-03-18.

[¶18] Gross contends a contract was created between him and the Estate when DePuydt declared him the winning bidder after declaring the Ebels the winning bidders. Specifically, Gross asserts he substantially complied with the bidding process, DePuydt modified the bidding process, or she waived the defects in his bids. Gross argues the district court erred by failing to adjudicate his contract issue.

[¶19] At oral argument, the Ebels argued Gross's claim of a contract with the Estate was not raised in the district court through a crossclaim. It is true that Gross did not plead a crossclaim or counterclaim and his amended answer contains no express allegation that a valid contract was formed between him and the Estate or a specific demand for relief stemming from an alleged contract with the Estate. Gross, however, did request the court to deny the Ebels' requested relief and dismiss the amended complaint, which would leave in place his purported agreement with the Estate, and for "such other and further relief as the Court deems just and equitable under the circumstances."

[¶20] Although not pled, an issue may be tried by the consent of the parties:

7

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. Failure to amend does not affect the result of the trial of that issue.

N.D.R.Civ.P. 15(b)(2). "Under N.D.R.Civ.P. 15(b), a pleading may be impliedly amended by the introduction of evidence which varies the theory of the case and which is not objected to on the grounds it is not within the issues in the pleadings." *Lochthowe v. C.F. Peterson Est.*, 2005 ND 40, ¶ 8, 692 N.W.2d 120. "Implied consent is established where the parties recognized that the issue entered the case at trial and acquiesced in the introduction of evidence on that issue." *Mertz v. Mertz*, 2015 ND 13, ¶ 6, 858 N.W.2d 292.

[¶21] In *Johnson v. Mark*, 2013 ND 128, ¶ 16, 834 N.W.2d 291, we concluded that an abandonment issue—concerning whether a purchaser "abandoned" a contract for deed—was tried by implied consent where "[t]he district court's summary judgment ruling injected the issue of abandonment into [the] proceedings." We reasoned that "[a]lthough the court did not use the term 'abandonment,' the import of the summary judgment ruling provided [plaintiff] with fair notice of what had become the defendants' defense." *Id.*; *see also SolarBee, Inc. v. Walker*, 2013 ND 110, ¶¶ 13, 16, 833 N.W.2d 422 (noting unpled breach of employment contract issue was raised in pre-trial briefing without objection and concluding "novelty" of the issue was "reasonably apparent and the intent to try the issue was clearly indicated by failure to object or otherwise" (cleaned up)); *Vig v. Swenson*, 2017 ND 285, ¶ 25, 904 N.W.2d 489 (concluding issue was tried by consent where it was raised at trial and in post-trial brief without objection); *Askew v. Joachim Mem'l Home*, 234 N.W.2d 226, 237 (N.D. 1975) (concluding unpled ratification issue before the Court where issue was argued, evidence was offered, and both parties and the district court were aware issue was "intertwined with the basic question of the contract's validity").

[¶22] After the Ebels moved for partial summary judgment, Gross argued his bids were valid and the Estate amended the bidding process. Without objecting on the grounds the issue was not pled, the Ebels addressed the issue on the

merits. In its order denying partial summary judgment, the district court acknowledged that genuine issues of material fact existed, including whether the Estate "modified the bidding conditions" or "waived any irregularities of bids." Both the Ebels and Gross address these arguments in their pre-trial briefs. At trial, Gross extensively questioned witnesses concerning his bids. Specifically, DePuydt testified to receiving Gross's bids and recognizing him as the winning bidder and providing him the abstracts after declaring the Ebels the winning bidders. In his post-trial proposed findings and conclusions, Gross more affirmatively stated, "A valid contract existed between Defendant, Tom Gross, and the Estate of Mark Engelhardt and Mr. Gross' bid is valid and enforceable. The Personal Representative shall take immediate action to transfer the Property to Defendant, Tom Gross, consistent with financing and payment requirements." In their proposed post-trial order, the Ebels contended that "Gross's bids remained invalid," having failed to conform to the notice letter.

[¶23] After the pleading stage, Gross consistently argued he has valid bids through modification of the bidding process, substantial compliance, or waiver of defects. The Ebels were well aware of the issue, responding to the arguments on the merits in their summary judgment and pre-trial briefs and proposed post-trial order. At trial, Gross questioned witnesses trying to establish his bids were valid. The Ebels did not object to the issue on the ground it was not pled. We conclude the issue of whether there was a contract between Gross and the Estate subsequent to the Ebels' contracts was tried by implied consent of the parties.

[¶24] Gross argues the district court erred by not determining whether he has a valid contract with the Estate. Although this is not a quiet title action, Gross has argued he formed a contract for the sale of the properties and requested that the Estate be required to sell those properties to him. Therefore, we understand his argument to mean that he is a subsequent good-faith purchaser with a superior interest to the Ebels' interests. *See, e.g.*, *Chornuk v. Nelson*, 2014 ND 238, ¶¶ 11-15, 857 N.W.2d 587. Gross does not appear to be seeking money damages or some other form of relief from the Estate for any alleged breach of contract.

[¶25] The district court made no finding on whether Gross formed a contract with the Estate. However, even if Gross had a contract with the Estate, he must also have had a superior interest as a good-faith purchaser.

> A party's status as a good faith purchaser without notice of a competing interest is a mixed question of fact and law. This Court has determined the facts necessary to determine whether a party has attained the status of a good-faith purchaser without notice constitute findings of fact. On the other hand, a trial court's ultimate determination a party acted in good faith constitutes a conclusion of law.

*Sundance Oil & Gas, LLC v. Hess Corp.*, 2017 ND 269, ¶ 12, 903 N.W.2d 712 (cleaned up). The court made no finding on whether Gross was a good-faith purchaser or whether he had actual notice of the contracts between the Ebels and the Estate. While the issue of whether a party has notice of a competing interest is generally a finding of fact, here the parties do not dispute the fact that the Estate awarded the bids first to the Ebels, and Gross was present and heard the bids awarded; therefore, he had actual notice as a matter of law. "Actual notice shall consist in express information of a fact." N.D.C.C. § 1-01-23. Because Gross had notice of the competing interest, he cannot prevail on any claim as a subsequent good-faith purchaser with a superior interest to the Ebels' interests.

IV

[¶26] The Ebels argue the district court erred in dismissing their tortious interference with contract claims against Gross. "To succeed on a claim for intentional interference with contract, a plaintiff must prove (1) a contract existed, (2) the contract was breached, (3) the defendant instigated the breach, and (4) the defendant instigated the breach without justification." *Thimjon Farms P'ship v. First Int'l Bank & Tr.*, 2013 ND 160, ¶ 11, 837 N.W.2d 327 (cleaned up). "Tortious interference requires a person who is not a party to the contract to interfere with the contract." *Id.* The court found that contracts existed between the Ebels and the Estate, the Estate breached those contracts, and Gross instigated the breaches, but was justified under the circumstances.

10

[¶27] The Ebels contend the district court erred in finding Gross was justified in instigating the Estate's breach of contract. "[O]rdinarily justification is a question of fact, but justification can be decided as a matter of law by showing a defendant was justified by a lawful object which he had a right to assert." *Thimjon*, 2013 ND 160, ¶ 13. "The test for proving justification is what is reasonable conduct under all the circumstances of the case." *Id.* "Even where the evidence shows a defendant interfered with a contract, the defendant's actions are justified if they are done for legitimate business concerns and did not maliciously seek to damage the plaintiff." *Id.* (cleaned up).

[¶28] The district court found Gross's conduct was reasonable under the circumstances, his actions were done for legitimate business concerns, and he did not maliciously seek to damage the Ebels. The Ebels assert the acts of interference include Gross's question—"What about my bid?"—and pursuing his claim that he was the highest bidder when his bids did not comply with the notice letter. Assuming without deciding this conduct constitutes instigating the breach, we conclude that under the circumstances Gross was justified in inquiring whether his bids were considered and pursuing his claim that he was the highest bidder. It is undisputed that Gross was invited to place bids on these properties through the notice letter and was pursuing legitimate business concerns while present at the DePuydt Law Office on December 17, 2021. Gross testified he believed DePuydt recorded his bids before returning them to him prior to the 2:00 p.m. deadline, and it did not occur to him that she did not record them until after she declared the Ebels the winners. DePuydt testified that Gross did not threaten her when inquiring about his bids or otherwise coerce her or the personal representative into accepting his bids. The Ebels cite no evidence that Gross was maliciously seeking to damage them, as opposed to honestly believing he was the winning bidder. Although the Ebels and the Estate formed a contract, which was subsequently breached by the Estate, Gross's actions were reasonable under the circumstances.

[¶29] The Ebels argue that "[t]o be legally justified, a defendant must have an interest in the subject of the contract equal to or greater than the plaintiff's interest," citing a federal district court case, *SmartLease USA, LLC v. Exec. Hous.*

11

*Sols., LLC*, No. 4:14-CV-040, 2022 WL 1159417 (D.N.D. Mar. 16, 2022). In *SmartLease*, the federal district court noted, "One authority that the North Dakota Supreme Court has relied upon for other aspects of a claim for tortious interference with contract has stated that the defendant must possess 'rights that are equal to or greater' than the plaintiff's contractual rights in order to claim justification." *SmartLease*, at *47 (quoting 44B Am. Jur. 2d *Interference* §§ 24-25 (Nov. 2021 Update)). This Court, however, has never adopted or applied this test in determining whether a defendant's conduct was justified. Nor do the Ebels provide a persuasive reason to adopt the test. Accordingly, we reject this test, which unnecessarily and arbitrarily restricts a defendant's ability to show his conduct was justified, and rely on our precedent, which the district court applied in this case.

[¶30] Similarly, the Ebels contend the district court failed to analyze all of the Restatement (Second) of Torts § 767 (1979) factors in determining whether Gross was justified in instigating the breach. We have never adopted this seven-factor test, required an analysis of each and every factor, or stated these factors comprise an exhaustive list. *See Hennum v. City of Medina*, 402 N.W.2d 327, 338-39 (N.D. 1987) (identifying Restatement factors without adopting the seven-factor test or applying every factor). Rather, our case law consistently looks to "what is reasonable conduct under all the circumstances of the case." *Thimjon*, 2013 ND 160, ¶ 13. To the extent the Ebels request the Court to adopt this seven-factor test, which would be to the exclusion of all other relevant considerations, we reject that request and adhere to our established precedent on justification as stated in *Thimjon* and its progeny. We conclude the court's findings on the justification element were not induced by an erroneous view of the law.

[¶31] We conclude the district court did not err in finding Gross's actions were justified and in dismissing the Ebels' tortious interference with contract claims.

V

[¶32] We have considered the remaining arguments and conclude they are either unnecessary to our decision or without merit. The judgment is affirmed.

12

[¶33] Jon J. Jensen, C.J.

Daniel J. Crothers

Lisa Fair McEvers

Jerod E. Tufte

Douglas A. Bahr